IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ERIC NISLEY, | Case No. 3:21-cv-01011-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| ELLEN F. ROSENBLUM, in her individual capacity; FREDERICK BOSS, in his individual capacity, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Eric Nisley ("Nisley") brings this 42 U.S.C. § 1983 action against Oregon Attorney General Ellen Rosenblum ("Rosenblum") and former Oregon Deputy Attorney General Frederick Boss ("Boss") (together, "Defendants"), alleging claims for violations of his rights to equal protection and procedural and substantive due process. Defendants move to dismiss Nisley's substantive due process claim for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and the parties have consented to the jurisdiction of a magistrate judge pursuant

PAGE 1 – OPINION AND ORDER

to 28 U.S.C. § 636(c). For the reasons explained below, the Court denies Defendants' motion to dismiss.

## BACKGROUND[1]

This case concerns Nisley's service as the district attorney for Wasco County, Oregon (the "County"). (Second Am. Compl. ("SAC") ¶¶ 5-8.) After serving three four-year terms, Nisley was reelected as the County's district attorney in 2016 and began serving a fourth term in January 2017. (*Id.* ¶ 7.) Nisley filed as a candidate for reelection in September 2019. (*Id.* ¶ 8.)

In December 2019, the Oregon Supreme Court concluded that Nisley "violated the Oregon Rules of Professional Conduct and ordered that he be temporarily suspended from the practice of law for a period of [sixty] days." (*Id.* ¶ 10.) In late January 2020, about two weeks before Nisley's temporary suspension began, Boss sent a letter to Oregon Governor Kate Brown (the "Governor"), advising her that Nisley's suspension would render the County's office of district attorney "vacant" within the meaning of OR. REV. STAT. § 236.010(1)(g).[2] (SAC ¶¶ 9-12, 39.) Boss's letter also advised the Governor to "take 'immediate action' to appoint a successor," and suggested that Rosenblum's office was prepared to discharge Nisley's responsibilities. (*Id.* ¶ 11.)

In early February 2020, the Governor sent a letter to Rosenblum stating, "I am compelled to direct you to discharge the responsibilities of the Wasco County District Attorney starting on

---

[1] Nisley alleges the following facts in his second amended complaint, and the Court "accept[s] 'all [well-pleaded] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.'" *Curtis v. Irwin Indus.*, 913 F.3d 1146, 1151 (9th Cir. 2019) (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009)).

[2] Oregon Revised Statutes § 236.010(1)(g) provides, in relevant part, that "[a]n office shall become vacant before the expiration of the term if . . . [t]he incumbent ceases to possess any other qualification required for election or appointment to such office." OR. REV. STAT. § 236.010(1)(g).

PAGE 2 – OPINION AND ORDER

February 10, 2020, until I can appoint a successor or one is lawfully elected." (*Id.* ¶ 15.) The Governor's letter did not declare that the County's office of district attorney was vacant. (*Id.*)

Although the Governor did not direct them to do so, Defendants removed Nisley from his position as district attorney, announced Nisley's removal from office, directed County officials to exclude Nisley from the district attorney's office, and withheld Nisley's salary and benefits. (*Id.* ¶¶ 15, 18.) Defendants also sent their staff members to assume control of the district attorney's office, instructed office personnel to stop communicating with Nisley, and instructed the County to remove Nisley's name from its website and the district attorney's office and to identify an assistant attorney general as the County's acting district attorney. (*Id.* ¶¶ 16-17.)

Despite receiving a detailed written analysis from Nisley's counsel explaining why his temporary suspension did not result in a vacancy, Defendants "refused to reconsider their legal advice to the Governor and the actions that they undertook or caused to be undertaken to terminate [Nisley's] employment and oust him from his public office." (*Id.* ¶ 21.) Other Oregon district attorneys have been temporarily suspended from the practice of law (in one case, the attorney was suspended for six months and prosecuted for related crimes), but they continued to "hold the office of district attorney, . . . be paid [their] regular salary and benefits, . . . [and] enjoy all of the perquisites of the office during . . . their suspension[.]" (*Id.* ¶¶ 13-14, 51-58.)

In March 2020, not long after it became public that Defendants removed Nisley from his elected office and only a few weeks before Oregon's primary election, another candidate launched a campaign for district attorney. (*Id.* ¶ 22.) Nisley lost his bid for reelection in May 2020. (*Id.*)

Four months later, on September 24, 2020, the Oregon Supreme Court held in a *quo warranto* proceeding that despite Nisley's temporary suspension, "the office of Wasco County

PAGE 3 – OPINION AND ORDER

District Attorney did not become vacant, and [Nisley] remain[ed] the rightful holder of the office until the expiration of his term of office." (*Id.* ¶ 23, quoting *State ex rel. Rosenblum v. Nisley*, 473 P.3d 46, 55 (Or. 2020).)

After the Oregon Supreme Court issued its decision, the Governor sent a letter to Rosenblum rescinding her February 4, 2020 directive, and the State of Oregon restored Nisley's "position and paid both his salary and insurance benefits for the interim period." (*Id.* ¶ 24.) Nisley returned to the district attorney's office in October 2020 and completed his four-year term in January 2021. (*Id.* ¶¶ 24-25.) Thereafter, and "[d]espite a comprehensive search, [Nisley] was unable to find permanent employment as a prosecutor." (*Id.* ¶ 26.) As a result, Nisley accepted a temporary deputy district attorney position in Jefferson County, Oregon, which ended on June 3, 2022. (*Id.*)

Based on the foregoing events, Nisley filed this action against Defendants on July 9, 2021. In his second amended complaint, Nisley alleges claims against Defendants for violations of his rights to equal protection and procedural and substantive due process.

## LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (simplified).

PAGE 4 – OPINION AND ORDER

## DISCUSSION

In their second motion to dismiss, Defendants argue that Nisley fails to state a substantive due process claim. (State Defs.' Second Mot. Dismiss ("Defs.' Mot.") at 1-4, ECF No. 32.) As explained below, the Court disagrees, and denies Defendants' motion to dismiss.

### I.   APPLICABLE LAW[3]

"To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Heidt v. City of McMinnville*, No. 15-989-SI, 2015 WL 9484484, at *7 (D. Or. Dec. 29, 2015) (quoting *Nunez v. City of L.A.*, 147 F.3d 867, 971 (9th Cir. 1998)). Notably, "'only the most egregious official conduct' establishes a substantive due process violation." *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

To state a substantive due process claim, a plaintiff must allege facts demonstrating that the defendant's actions "shock[ed] the conscience." *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1195-96 (9th Cir. 2013) (explaining that "[t]o constitute a violation of substantive due process, the alleged deprivation must 'shock the conscience and offend the community's sense of fair play and decency,'" and holding that the plaintiffs' complaint "fail[ed] as a matter of law" because the plaintiffs' allegations did not "plausibly suggest," among other things, that the defendants' actions "rose to the level of [conduct] 'that shock[ed] the conscience'") (citations omitted). Merely alleging "negligence or lack of due care" is insufficient to state a substantive

---

[3] The parties do not dispute the law governing Nisley's substantive due process claim discussed in the Court's May 23, 2022 Opinion and Order (ECF No. 28). (*See* Defs.' Mot. at 1-4; Defs.' Reply at 1-3, ECF No. 34; Pl.'s Resp. Opp'n Defs.' Second Mot. Dismiss ("Pl.'s Resp.") at 4, ECF No. 33.)

due process claim. *Leontiev v. Corbett Sch. Dist.*, 333 F. Supp. 3d 1054, 1063 (D. Or. 2018) (quoting *Woodrum v. Woodward Cnty., Okla.*, 866 F.2d 1121, 1126 (9th Cir. 1989)).

To evaluate substantive due process claims, courts must, as a threshold matter, determine which of two standards applies. *See A.B. v. Cnty. of San Diego*, No. 20-56140, 2022 WL 1055558, at *2 (9th Cir. Apr. 8, 2022) ("For Fourteenth Amendment substantive due process claims, official conduct that shocks the conscience is cognizable. As a threshold matter, courts must determine which of two standards applies.") (simplified). The first standard, known as the "deliberate indifference" standard, "requires a plaintiff to show that the official . . . 'disregarded a known or obvious consequence of his action,'" and "applies only if the circumstances are such that 'actual deliberation is practical.'" *Id.* (quoting *Nicholson v. City of L.A.*, 935 F.3d 685, 692 (9th Cir. 2019) and *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017)). By contrast, "[t]he second standard requires a plaintiff to demonstrate that the official acted 'with a purpose to harm unrelated to legitimate law enforcement objectives.'" *Id.* (quoting *Nicholson*, 935 F.3d at 693).

## II.   ANALYSIS

Defendants argue that although Nisley attempted to cure his previously dismissed substantive due process claim, Nisley's new allegations "add nothing" to and do not alter the "essence" of his original claim. (Defs.' Mot. at 2-4.) In other words, Defendants argue that Nisley continues to complain only about an "incorrect interpretation of Oregon statutes," or a "mistake of law," which does not rise to the level of conduct that shocks the conscience. (*Id.*)

In its prior decision, the Court explained that because Nisley's allegations reflect that Defendants had reasonable time to deliberate before acting, Defendants' conduct would be conscience-shocking if taken with deliberate difference toward Nisley's constitutional rights. *See Nisley*, 2022 WL 1630011, at *6 (noting that in addressing a district court's dismissal under F<small>ED</small>.

PAGE 6 – OPINION AND ORDER

R. Civ. P. 12(b)(6), the Ninth Circuit has explained that "[w]here . . . circumstances afford reasonable time for deliberation before acting, [the Ninth Circuit] consider[s] conduct to be conscience-shocking if it was taken with deliberate indifference toward a plaintiff's constitutional rights" (quoting *Sylvia*, 729 F.3d at 1195)). The Court also explained that because Defendants did not suggest that Nisley failed adequately to allege that Defendants' actions implicated Nisley's constitutional rights, the Court assumed without deciding that Nisley sufficiently alleged a constitutionally-protected interest in his right to, among other things, continue to hold elected office. *Id.* at *6 n.5 (citation omitted).

As a result, resolution of Defendants' first motion to dismiss Nisley's substantive due process claim turned on whether he had alleged facts to plausibly suggest that Defendants' actions were conscience-shocking, in that they were taken with deliberative indifference toward Nisley's constitutional rights. *See id.* at *8 (evaluating whether Nisley plausibly alleged that Defendants' actions were "taken with deliberate indifference toward Nisley's constitutional rights"). The Court explained that Nisley's claim, as then pleaded, "stem[med] entirely from . . . Defendants' 'interpretation' of, and 'legal position' regarding, Or. Rev. Stat. § 236.010(1)(g), as it related to the Oregon Supreme Court's decision to suspend Nisley from the practice of law for sixty days, and . . . Defendants' resulting 'legal advice' to the Governor." *Id.* at *7. Recognizing that the Oregon Supreme Court ultimately determined that Defendants' legal interpretation was incorrect and that an erroneous legal interpretation or misjudgment of law does not rise to the level of a substantive due process violation, the Court held that Nisley failed to state a plausible claim. *Id.* at *8.

In their second motion to dismiss, Defendants again do not suggest that Nisley fails adequately to allege that Defendants' actions implicated Nisley's constitutional rights, and

PAGE 7 – OPINION AND ORDER

Nisley's allegations continue to reflect that Defendants were afforded reasonable time to deliberate before acting. (*See* Defs.' Mot. at 1-4; Defs.' Reply at 1-3; SAC ¶¶ 7-22.) As a result, the Court once again assumes without deciding that Nisley sufficiently alleges a constitutionally-protected interest in his right to, among other things, continue to hold elected office, and finds that Defendants' alleged conduct would be conscience-shocking if taken with deliberate difference toward Nisley's constitutional rights.

The Court's analysis thus turns on the same question presented in its prior opinion with respect to Nisley's substantive due process claim: has Nisley adequately alleged that Defendants' actions were conscience-shocking, i.e., taken with deliberate indifference to Nisley's constitutional rights. *See Sylvia*, 729 F.3d at 1195-96 ("Where, as here, circumstances afford reasonable time for deliberation before acting, we consider conduct to be conscience-shocking if it was taken with deliberate indifference toward a plaintiff's constitutional rights. Plaintiffs' complaint falls short of this standard. . . . None of the allegations plausibly suggest that [the city program] was arbitrarily and unreasonably applied to any of the plaintiffs, or that the placement of plaintiffs' properties into [the program] rose to the level of [conduct] that shocks the conscience. Accordingly, plaintiffs' complaint fails as a matter of law[.]") (simplified); *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (explaining that the Ninth Circuit has "distinguished the 'purpose to harm' standard from the 'deliberate indifference' standard, recognizing that the overarching test under either is whether the [official's] conduct 'shocks the conscience'") (citation omitted).

Accepting Nisley's allegations as true and drawing all reasonable inferences in his favor, as the Court must, Nisley has stated a plausible substantive due process claim. Nisley's second amended complaint includes several new, noteworthy, and well-pleaded factual allegations that

PAGE 8 – OPINION AND ORDER

differentiate his current substantive due process claim from the one this Court previously dismissed, which stemmed entirely from a reasonable, but erroneous, legal interpretation.

Unlike his first amended complaint, Nisley alleges in his second amended complaint that Defendants' erroneous legal interpretation "originated from attorneys" in the Criminal Justice Division ("CJD") of the Oregon Department of Justice, even though (1) the General Counsel Division ("GCD") normally handles issues related to whether there is a vacancy in the public office within the meaning of OR. REV. STAT. § 236.010(1)(g), (2) Defendants "knew that [Nisley] had [previously] accused the [CJD] of conducting an inadequate and unprofessional investigation" which led to the Oregon State Bar's disciplinary proceedings, where CJD attorneys and investigators "appeared as witnesses against [Nisley]," (3) Defendants "knew or should have known that [CJD] attorneys and investigators harbored ill will and resentment toward [Nisley]," and (4) nobody "asked the [CJD] to opine on [the] issue" of whether Nisley's temporary suspension from the practice of law created a vacancy in the office of district attorney. (SAC ¶¶ 43-44.)

Nisley further alleges that after Defendants "settled on their erroneous interpretation," Defendants asked the GCD "which state officials had authority to declare that the [County's office of district attorney] was vacant." (*Id.* ¶ 40.) A GCD attorney stated that the Governor had such authority, but "also warned that there may be circumstances when it is appropriate for the Governor to avail herself of the modern version of *quo warranto* contained in [OR. REV. STAT. §] 30.510."[4] (*Id.* ¶ 40.) Despite this warning, the absence of any directive from the Governor or

---

[4] The purpose of a *quo warranto* proceeding is to, among other things, challenge the right of a person to hold and exercise the functions of a public office. *See State ex rel. Mullican v. Parsons*, 479 P.2d 734, 734 (Or. 1971) ("This is a quo warranto proceeding challenging the right of defendant to hold and exercise the functions of the office of municipal judge of the city of Toledo."); *see also Harris v. City of Houston*, 151 F.3d 186, 202 n.15 (5th Cir. 1998) (DeMoss,

PAGE 9 – OPINION AND ORDER

other state official to do anything other than discharge the prosecutorial duties of the County's district attorney, and the "unprecedented" nature of their actions, Defendants decided to "immediately terminate [Nisley's] employment" and caused the State of Oregon to "discontinue paying [Nisley's] salary" as of February 10, 2020 (i.e., the day Nisley's sixty-day suspension began) and terminate Nisley's "employer-provided health insurance, which also was the source of his daughter's health insurance coverage, as of February 29, 2020." (*Id.* ¶¶ 10, 13-20, 41-42, 51-58.)

Nisley alleges that other Oregon district attorneys have been temporarily suspended from the practice of law, including one who was suspended for six months and prosecuted for related crimes, but they continued to "hold the office of district attorney, . . . be paid [their] regular salary and benefits, . . . [and] enjoy all of the perquisites of the office during . . . their suspension[.]" (*Id.* ¶¶ 13-14, 51-58.) Nisley also notes that the State of Oregon did not file a petition for a writ of *quo warranto* on behalf of Rosenblum until "mid-2020, [i.e.,] only *after* [D]efendants had removed [Nisley] from office and terminated his employment[.]"[5] (*Id.* ¶ 23); *see also Nisley*, 473 P.3d at 47 (reflecting that "the state filed a petition for a writ of *quo*

---

J., dissenting) (explaining that *quo warranto* literally means "by what authority," and that "[t]he purpose of a *quo warranto* proceeding is to question the right of a person or corporation, including a municipality, to exercise a public franchise or office") (simplified). Although "[t]he writ of *quo warranto* has been abolished since at least 1854—before the adoption of the [Oregon] constitution," *Nisley*, 473 P.3d at 48 n.2, the Oregon Supreme Court "generally still refer[s] to an action commenced under the statutory [replacement] procedures 'as a proceeding in *quo warranto*.'" *Id.* at 48 (quoting *State ex rel. Madden v. Crawford*, 295 P.2d 174, 177 (Or. 1956)). Notably, "[t]he Oregon Constitution grants [the Oregon Supreme Court] original jurisdiction over *quo warranto* proceedings." *Id.* at 47 (citing OR. CONST. art. VII (amended), § 2).

[5] The Court takes judicial notice of the April 29, 2020 "[i]nitiating" petition on the *Nisley* docket. *See Chase MacCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020) (taking judicial notice of filing dates on court dockets); FED. R. EVID. 201(c)(1) ("The court . . . may take judicial notice on its own[.]").

PAGE 10 – OPINION AND ORDER

*warranto* on behalf of the Attorney General, in which it asked [the Oregon Supreme Court] to determine that [Nisley was] not the lawful holder of the office of Wasco County District Attorney").

Based on these and other facts, Nisley alleges that Defendants' actions were "prompted by subordinates . . . who harbored ill-will and bias against [him], and singled [him] out for discriminatory treatment that no other Oregon district attorney had ever been subjected to." (SAC ¶¶ 38-45.) Nisley alleges that Defendants' actions were taken with deliberate indifference toward Nisley's constitutional rights and, therefore, were conscience-shocking. (*Id.* ¶ 46.)

The Court must accept Nisley's new, well-pleaded factual allegations as true and draw all reasonable inferences in his favor, and doing so compels the conclusion that he has stated a plausible substantive due process claim. Contrary to Defendants' arguments, Nisley's amended claim does not "mirror" the claim this Court previously dismissed, address only Defendants' "mistake[] on the law" or "misinterpretation of law," or rely only on vague, ill-defined, and conclusory allegations and legal conclusions about "government overreach." (Defs.' Reply at 1-2; Defs.' Mot. at 3.)

For example, Nisley alleges in his amended claim that CJD attorneys and investigators—whom Nisley had previously accused of conducting an inadequate and unprofessional investigation, appeared as witnesses against Nisley during the Oregon State Bar's disciplinary proceedings, and do not typically handle issues related to whether there is a vacancy in a public office—played a significant role in Defendants' decision to remove Nisley from his publicly elected office and treat Nisley differently from other district attorneys who had been temporarily suspended from the practice of law. In addition, Nisley alleges in his amended claim that despite

PAGE 11 – OPINION AND ORDER

being aware of the above facts, the potential safeguard of a petition for a writ of *quo warranto*, the absence of a directive from the Governor to do anything other than discharge the prosecutorial duties of the County's district attorney, and the "unprecedented" nature of their actions, Defendants decided to "immediately terminate [Nisley's] employment" and caused the State of Oregon to "discontinue paying [Nisley's] salary" and terminate Nisley's "employer-provided health insurance, which also was the source of his daughter's health insurance coverage[.]" (SAC ¶¶ 10, 13-20, 41-42, 51-58.)

Given these allegations, the Court finds that Nisley has plausibly alleged that Defendants arbitrarily and unreasonably singled out Nisley and that Defendants' actions rose to the level of conduct that shocks the conscience and offends the community's sense of fair play and decency. Cf. *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) (explaining that the "arbitrary administration of the local regulations, which singles out one individual to be treated discriminatorily, amounts to a violation of that individual's substantive due process rights"). For these reasons, the Court finds that Nisley has stated a plausible claim for violation of his substantive due process rights, and denies Defendants' second motion to dismiss.

## CONCLUSION

For the reasons stated, the Court DENIES Defendants' second motion to dismiss (ECF No. 32).

**IT IS SO ORDERED.**

DATED this 21st day of September, 2022.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge